CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 01 2008

JOHN F. CORCORAN, CLERK
BY: /s/
    DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 7:08mc003 |
| ) | |
| JOHN CROCKETT HENRY et al., ) | |
| ) By: | Michael F. Urbanski |
| ) | United States Magistrate Judge |
| Defendants. ) | |

### MEMORANDUM OPINION

This matter stems from intervening plaintiffs' motion, filed on June 10, 2008, for sanctions and petition for issuance of a rule to show cause why William A. White ("White") should not be held in contempt of court. This motion concerns subpoenas served on or about January 30, 2008 to White and four of his corporations: White Homes & Land, LLC; White Politics, LLC; American National Socialist Workers' Party, LLC; and National Socialist Movement of Roanoke, LLC. The subpoenas sought production of electronic information and computers used by White in conjunction with White's alleged interference with a fair housing lawsuit pending in the Eastern District of Virginia.[1] On February 11, 2008, White filed two motions to quash these subpoenas in the Eastern District of Virginia. These motions were withdrawn, as the subpoenas were issued out of the Western District of Virginia, making this district the appropriate venue to entertain the motions to quash. White subsequently refiled these motions in this district on March 3, 2008. By order entered March 6, 2008, the court denied

---

[1] The parties have informed the court that the underlying litigation in the Eastern District of Virginia has been settled. According to the parties, however, the settlement contained a carve out provision for any link established between the defendant in that case and White and for matters relating to these subpoenas and any contempt or sanctions motions pertaining to White.

White's motions to quash and ordered that the subpoenaed computers be produced to a court appointed computer forensic expert, Dr. Glenn Dardick ("Dardick") of Longwood University, for imaging and analysis. Order Denying Motion to Quash, Dkt. #7. By agreed order dated March 12, 2008, Dr. Dardick was asked to perform various computer searches for relevant data and to "examine and search the electronically-stored information produced to him for evidence of any destruction, deletion, erasing, overwriting or other compromising of data." Agreed Protective Order of March 12, 2008, Dkt. #9. After investigation, Dr. Dardick, by email dated April 11, 2008, reported an "unusual number of files deleted."[2] Email from Dr. Dardick to all counsel of record dated April 11, 2008. Specifically, Dr. Dardick reported that his analysis of White's computers revealed that 53,199 files located in White's Recycler folder were emptied on February 24, 2008. Id. This emptying of 59% of the Recycler folder was done three weeks after the subpoenas were served and eight days before the March 3, 2008 hearing. Id. In an email dated April 18, 2008, Dr. Dardick was posed the following question by counsel for the United States Department of Justice ("DOJ") and made the following response:

> [Question:]
>
> Is your finding that 53,199 files were "emptied" on 2/24/2008 consistent with an effort by the user of the computer to intentionally delete or destroy certain data files on that date?

---

[2] The string of email communications between Dr. Dardick and all counsel of record regarding the issue of deletion of data from White's computers is attached as Exhibit A. Pursuant to Standing Order No. 04-1 of the court, regarding redaction of personal data identifiers from all pleadings, the user names or local part of all email addresses, phone numbers, and fax numbers have all been redacted for public viewing. The domain name for the email addresses, however, have not been redacted. Unredacted copies of these materials shall be filed under seal in accordance with Standing Order No. 04-1.

2

> [Answer:]
>
>> Although, I cannot give an opinion on why the files were emptied, I can say that the deletion of the files, given the quantity and content would be consistent with an effort by the user of the computer to intentionally delete or destroy certain data files on that date.

Email from Dr. Dardick to all counsel of record dated April 18, 2008. Dr. Dardick performed additional analysis and investigation concerning the deleted data pursuant to an order dated April 22, 2008. After further inquiry and email communication with counsel for the parties, Dr. Dardick was asked by counsel for the United States on May 1, 2008 whether his further investigation provided him "any reason as yet to change your earlier conclusion that the condition of the PC drive is consistent with an intentional effort by the user to destroy files? Could you explain?" Email from Daniel Yi of DOJ to Dr. Dardick and all counsel of record dated May 1, 2008. Dr. Dardick responded a little over two hours later as follows:

> I have no reason to change my earlier conclusion that the deletion of the files was consistent with an intentional effort by the user to destroy files. However, the additional information that is now available, such as the file listings could assist the parties in supporting their arguments whether the evidence is not just "consistent," but whether or not the evidence supports or does not support the hypothesis that the deletion of the files were in fact an intentional effort by the user to destroy specific files.

Email from Dr. Dardick to all counsel of record dated May 1, 2008. In communications with Dr. Dardick, White's counsel questioned whether the large number of deleted files could be due to file compression or to free up disk space. By emails dated April 11 and April 18, 2008, Dr. Dardick rejected the suggestion that the large number of deleted files were due to file compression. On May 2, 2008, Dr. Dardick provided a lengthy explanation to Harry Brown,

3

counsel for White, that it "seems unlikely" that the deletions were done to free up disk space as White's computer already had free disk space of "more than a third of the drive's capacity." Email from Dr. Dardick to all counsel of record dated May 2, 2008.

In their motion for sanctions and contempt filed on June 10, 2008, intervening plaintiffs allege that White intentionally deleted these files "at a time when he had actual knowledge that the information was being sought in discovery and that it might contain relevant information." Show Cause Motion at ¶ 7, Dkt. #26. Intervening plaintiffs assert further that "Dardick reported on May 22, 2008 that approximately 4,581 possibly relevant files containing user-created text (emails, Microsoft Word documents, Microsoft Excel files, etc) were irretrievable because of the large number of electronic files White had deleted at one time." Show Cause Motion at ¶ 8. Because of White's alleged mass file deletion in the face of the subpoenas for his computers, intervening plaintiffs move for sanctions and for White to show cause why he should not be held in contempt of court. Intervening plaintiffs also allege they are entitled to attorney's fees incurred as a result of the alleged destruction of documents in violation of the subpoenas and that Dr. Dardick be compensated for the time incurred by him in researching and analyzing the information destroyed by White. Show Cause Motion at ¶ 16.

Shortly after the Show Cause Motion was filed with the court, White filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Western District of Virginia. The court received notice of White's personal bankruptcy filing on June 16, 2008. The issue presently before the court is whether the automatic stay issued upon White's filing for bankruptcy, as

4

required by 11 U.S.C. § 362(a), stays the intervening plaintiffs' motion for sanctions and petition to show cause.[3]

Under 11 U.S.C § 362(a), a bankruptcy filing operates as a stay of "the commencement or continuation . . . of a judicial, administrative, or other action . . . against the debtor . . . ." 11 U.S.C. § 362(a)(1). The exemptions to the stay are listed in 11 U.S.C. § 362(b), including an exemption of the "commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1). A district court has concurrent jurisdiction with the bankruptcy court to determine the effect of White's bankruptcy proceeding on intervening plaintiffs' motion. See United States Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc., 64 F.3d 920, 927 n.11 (4th Cir. 1995) (citing Brock v. Morysville Body Works, Inc., 829 F.2d 383 (3d Cir. 1987)). Because the district court's jurisdiction "attached first in time," it is proper for the district court to determine the issue. Id. (citing Kline v. Burke Constr. Co., 260 U.S. 226 (1922)).

A threshold issue is whether the contempt proceeding is civil or criminal, as the automatic stay does not apply to criminal contempt proceedings. Whether a contempt proceeding is civil or criminal is determined by examining the "character and purpose of the sanction

---

[3] Although the subpoenas were issued to White and his four corporations, intervening plaintiffs' motion seeks sanctions and a motion to show cause only against White. The court notes that the four subpoenaed corporations would not be affected by an automatic stay resulting from White's personal bankruptcy filing. See A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986) (holding that, absent "unusual circumstances," an automatic stay is generally not applicable to third party defendants or co-defendants); see also Kreisler v. Goldberg, 478 F.3d 209, 213 (4th Cir. 2007). However, as intervening plaintiffs do not appear to seek sanctions or contempt against the subpoenaed corporate entities but rather seek to proceed only against White, the court will not address the issue of any sanctions or contempt concerning the four corporations.

5

involved," not by the manner in which the contempt proceeding is labeled. Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994) (citing Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441 (1911)) (internal quotations omitted); see also In re Dill, 300 B.R. 658, 667 (Bankr. E.D.Va. 2003) (quoting In re Maloney, 250 B.R. 671, 674 (Bankr. E.D.N.Y. 1996)). A civil contempt proceeding is remedial and either "coerces the defendant into compliance with the court's order" or "compensates the complainant for losses sustained." Bagwell, 512 U.S. at 827 (internal quotations omitted); see also Dill, 300 B.R. at 667. A criminal contempt proceeding is punitive and seeks to "vindicate the authority of the court." Bagwell, 512 U.S. at 828 (internal quotations omitted); see also Dill, 300 B.R. at 667. As such, penalties associated with criminal contempt are imposed "retrospectively for a completed act of disobedience" and without any provision for purge of the contempt. Bagwell, 512 U.S. at 828 (internal quotations omitted); see also Dill, 300 B.R. at 667.

To determine whether the stay applies to a contempt proceeding, the United States Bankruptcy Court for the Eastern District of Virginia has adopted an analysis which "examine[s] all aspects surrounding" the contempt proceeding. In re Rook, 102 B.R. 490, 494 (Bankr. E.D.Va. 1989), *aff'd* 929 F.2d 694 (4th Cir. 1991); see also In re Dunham, 175 B.R. 615 (Bankr. E.D.Va. 1994). In Rook, the debtor, Rook, was held in contempt in 1983 ("1983 contempt order") for disobeying a previous state court decree concerning a divorce settlement. Rook, 102 B.R. at 491. After many appeals, the state court reaffirmed the 1983 contempt order in 1989 ("1989 contempt order"). Id. Sometime before the 1989 contempt order, Rook filed for bankruptcy and moved for the application of the automatic stay to the civil contempt proceedings. Id. The state court did not apply the stay to the contempt proceedings, finding that
6

Rook was in contempt of court prior to his bankruptcy filing. Id. The Bankruptcy Court upheld the decision of the state court because the 1989 contempt order "was issued solely to uphold the dignity of the prior circuit court orders." Id. at 495. Rook was no longer able to bring himself into compliance with the 1983 contempt order, thus "converting a contempt citation, civil and remedial in nature, into a citation criminal and punitive in nature." Id.

Allowing those allegedly in contempt of court to avoid possible penalties by filing for bankruptcy would enable parties to "blatantly violate direct orders of [a] court and then seek shelter from a bankruptcy judge." Am. Online, Inc. v. CN Prods., Inc., 272 B.R. 879, 881 (Bankr. E.D.Va. 2002) (holding that plaintiff's discovery requests served for the purpose of determining if defendant was in contempt were not stayed by a bankruptcy filing) (quoting U.S. Spring Comm's Co. v. Buscher, 89 B.R. 154, 156 (Bankr. D.Kan. 1988)) (internal quotations omitted). "The bankruptcy process cannot be invoked to immunize contumacious behavior." Id.

The motion before the court does not specifically delineate whether it seeks criminal or civil contempt. There is nothing about the show cause motion which seeks to coerce White to do anything or to provide him an opportunity to mitigate or avoid punishment for the already completed file deletion. Like Rook, White is no longer able to bring himself into compliance with the subpoena which the contempt proceedings concern. The files were deleted, some of which cannot be recovered. The thrust of the motion is to punish the underlying alleged deletion of computer files in the face of federal court subpoenas for production of those files. As such, the relief sought in the contempt proceeding is not remedial, but punitive in nature, and would be issued to uphold the dignity of the subpoenas issued under the authority of the court under the Federal Rules of Civil Procedure. Fed.R.Civ.P. 45(e) ("The issuing court may hold in contempt

a person who, having been served, fails without adequate excuse to obey the subpoena."); see also Nilva v. United States, 352 U.S. 385 (1957) (affirming conviction of criminal contempt for disobeying a subpoena *duces tecum*). In Nilva, the Supreme Court noted that "it is settled that a criminal contempt is committed by one who, in response to a subpoena calling for corporation or association records, refuses to surrender them when they are in existence and within his control." 352 U.S. at 392. Destruction of documents called for by subpoena is likewise punishable as criminal contempt. Any sanctions issued for the deletion of the files subject to the subpoenas are not remedial, but rather would issue to vindicate the authority of the court. "[T]he automatic stay was not intended by Congress to be used as a sword," and White cannot be allowed to use his bankruptcy filing as such. In re Clowser, 39 B.R. 883, 886 (Bankr. E.D.Va. 1984). Accordingly, intervening plaintiffs' petition for a motion to show cause is properly considered to be a criminal contempt proceeding and exempt from the automatic stay under 11 U.S.C. § 362(b)(1).

The fact that intervening plaintiffs' motion seeks recovery of attorneys' fees and expert costs does not render the contempt civil and subject to the automatic stay. The expense, time, and effort expended by intervening plaintiffs' counsel and the court appointed expert as a result of the alleged contempt can be considered by the court as a factor in fashioning a criminal contempt penalty. Long ago, the Supreme Court upheld a criminal contempt sanction paid to a district court, half of which was to be paid to the party moving for criminal contempt for that party's reasonable expenses incurred as a result of the criminal contempt proceeding. Union Tool Co. v. Wilson, 259 U.S. 107, 109 (1922). More recently, the Fourth Circuit characterized an award of attorneys' fees which were "proximately caused by defiance" of court orders as a criminal contempt penalty. Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 822 (4th Cir.

8

2004). The Fourth Circuit explained that "putatively civil contempt sanctions will be held to be criminal sanctions in cases when the fines were 'not conditioned on compliance with a court order,' 'not tailored to compensate the complaining party,' but instead 'initiated to vindicate the authority of the court and to punish the actions of the alleged contemnor.'" 390 F.3d at 822 (quoting <u>Buffington v. Baltimore County</u>, 913 F.2d 113, 133-35 (4th Cir. 1990), and <u>Bradley v. Am. Household, Inc.</u>, 378 F.3d 373, 377-79 (4th Cir. 2004). Because the petition seeks to punish White for deletion of documents subject to a subpoena, actions which cannot now be remedied, it is essentially criminal in nature and not subject to the automatic stay. In connection with this criminal contempt proceeding, the amount of fees incurred by the parties may be considered by the court in fashioning an appropriate criminal contempt sanction.

Because the motion to show cause is a criminal contempt proceeding, the court must, under Rule 42 of the Federal Rules of Criminal Procedure, appoint a prosecutor to pursue this matter.[4] Accordingly, Julia C. Dudley, Acting United States Attorney for the Western District of Virginia, is appointed to prosecute this contempt allegation. Such prosecution is to include two aspects of criminal contempt: (1) the alleged destruction of computer files subject to subpoena as detailed herein and in Exhibit A; and (2) White's emailing of a derogatory and inflammatory email to the court's law clerk on June 18, 2008. The email, attached as Exhibit B, is vile, contumacious and laced with expletives. While the invective in the email is not directed at the court, it was communicated directly to the court's law clerk. Plainly, such statements would be

---

[4] By order entered June 13, 2008, intervening plaintiffs' motion was referred to the undersigned magistrate judge for report and recommendation. However, as this matter concerns criminal contempt, the undersigned magistrate judge, under 28 U.S.C. § 636(e)(6), must certify the facts to a district judge who shall hear the evidence and decide the issue.

9

contemptuous if uttered in open court. The court sees no difference in making such statements in an email sent to the court's law clerk as they are plainly disrespectful and constitute an insult to the dignity of the court and an affront to our system of justice.

Pursuant to 28 U.S.C. § 636(e)(6), the undersigned certifies to the district court the following facts which occurred outside the presence of the undersigned magistrate judge: (1) Intervening plaintiffs have filed a motion for sanctions and contempt, which the court construes as criminal in nature, based on Dr. Dardick's forensic computer analysis, asserting that White deleted thousands of files from his computers at a time when said computers were subject to a subpoena issued by counsel for the intervening plaintiffs under the authority of the Federal Rules of Civil Procedure and the United States District Court for the Western District of Virginia; and (2) White sent the profane email attached as Exhibit B to the undersigned's law clerk, the court-appointed expert and counsel of record in this proceeding on June 18, 2008.

White is **ORDERED** to appear before The Honorable James C. Turk, Senior United States District Judge, on Friday, July 18, 2008 at 10:00 a.m. to show cause why he should not be held in contempt by reason of the facts so certified.

The Clerk of the Court hereby is directed to send a copy of this Memorandum Opinion to all counsel of record and to Julia C. Dudley, Acting United States Attorney for the Western District of Virginia.

Enter this 30th day of June, 2008.

Michael F. Urbanski
United States Magistrate Judge

10

Case 7:08-mc-00003-JCT-mfu   Document 33   Filed 07/01/08   Page 10 of 10   Pageid#: 436